## Kozich Appeal

*James R. Caiola,* for appellant.

*Paul P. Wisler,* Deputy Attorney General, for Commonwealth.

KNIGHT, P. J., April 7, 1954.—On December 15, 1953, appellant was notified by the Secretary of Revenue that his operating privilege was suspended for one year from December 15, 1953.

This appeal followed and a hearing was held before the writer on February 24, 1954, at which the following facts were developed and evidence produced:

I. About 8 p.m. on April 19, 1953, appellant was driving his automobile in a westerly direction on the Ridge Pike, a four-lane highway. The speed was restricted by signs to 35 m. p. h. and the Ridge Pike, Route 422, at the place of the accident is a built-up, residential neighborhood. The night was clear and the surface of the road dry.

II. At the intersection of Ridge Pike and Schuylkill Avenue the automobile driven by appellant struck a boy, Fred Hatfield, 19 years old, inflicting injuries from which he died.

III. Defendant was arrested, charged with involuntary manslaughter and driving a motor vehicle while

under the influence of intoxicating liquor. On the bill charging involuntary manslaughter defendant, appellant, was acquitted. On the bill charging him with driving while under the influence he was also acquitted, but the jury imposed upon him the costs of prosecution.

IV. Alfred W. Dougherty, Jr., testified that he was driving a car behind the car of appellant for a distance of from one half to three quarters of a mile; that appellant's car veered from the right hand lane to the center lane and back again, but that at no time crossed the center line of the pike; that appellant was driving at a rate of between 30 and 35 m. p. h.; that appellant stopped after the accident but wanted to leave before the police arrived, that he smelled the odor of alcohol on his breath and that appellant seemed dazed and shocked. Appellant told witness he had not been drinking.

V. Dr. Anthony J. Giaimo, a licensed physician, testified that he examined appellant at 9:25 p.m. on the night of the accident; he described his appearance and the tests he made. From his appearance and the tests, plus the admission of appellant that he had consumed intoxicating liquor at his meals, the doctor gave his opinion that at the time of the examination appellant was under the influence of intoxicating liquor.

VI. Ralph K. Harner, chief of police of West Norriton Township, testified that he arrived at the scene of the accident a few moments after it happened; he described the position of the boy's body near the north curb of Ridge Pike; that he observed appellant, whose gait was not too steady; that there was a strong odor of alcohol on his breath; that appellant told him he had been drinking all afternoon; that in the opinion of the witness he was under the influence of intoxicating liquor and that appellant told him he did not see the boy before he hit him.

VII. Michael Kozich, appellant, testified that he visited friends in Swedeland that day; that he had dinner with them about 1 p.m.; that at the meal he had three glasses of wine mixed with a soft drink; that he had nothing more to drink that day; that with his friends he attended a funeral and then drove home; that he is 58 years old; that there were piles of dirt on the north side of Ridge Pike and he had to veer to his left to pass them, that his speed was not more than 35 m. p. h.; that he saw the boy run across the street and thought he had reached the other side; that he did not see the boy he hit; that he had been driving an automobile for 30 years and had never been arrested for a motor violation.

VIII. Charmaine McKinney testified that she was driving a car immediately behind appellant's car on the righthand lane of traffic. As she approached Schuylkill Avenue she saw the boy standing by a pole under an overhead light. She saw him bend over and then she saw papers flying and she knew somebody had been hit. At one place in her testimony she said she saw the boy standing on the road by a telephone or light pole; at another place in her testimony she said he was on the sidewalk by the pole, "He wasn't in the street".

The above is a digest of the admitted facts and the evidence produced at the hearing. The Vehicle Code provides that the Secretary of Revenue may suspend an operator's license whenever the secretary finds on sufficient evidence that the operator was operating any motor vehicle or tractor involved in an accident resulting fatally to any person, or operating while under the influence of liquor: Section 615(b) of The Vehicle Code of May 1, 1929, P. L. 905.

It will be noted that neither the secretary nor we are held to the high measure of proof required to convict a person of involuntary manslaughter. Simple

negligence would not be enough to convict of involuntary manslaughter, for the law requires that the conduct of an operator must be rash, reckless and heedless of the consequences and the rights of others, before a jury is warranted in bringing in a verdict of guilty of involuntary manslaughter. In our opinion, simple negligence of an operator, if it contributed in any way to the happening of the fatal accident, would justify the secretary and this court in suspending the operator's license.

With this legal background we will consider the evidence and facts of the case. The boy was crossing Ridge Pike at a street intersection, the place where pedestrians would normally cross; the intersection was well lighted for there was a street light almost immediately over the spot where the boy was hit; he had crossed or nearly crossed the four-lane highway in full view of oncoming cars; a disinterested witness said he saw the boy crossing the street and slowed down his car; appellant said he saw the boy crossing the street but *thought* he was safely on the other side and he did not see him when he was hit. The jury evidently attached great weight to the testimony of Mrs. McKinney and may have come to the conclusion that the boy had reached the other side of the street and for some reason stepped back on the cartway immediately in front of appellant's car. This witness had but a momentary glance at the boy and at one place in her testimony she described him as standing on the road; at another on the sidewalk. In either case the boy must have been very close to the curb on the north side of Ridge Pike. We think there was ample evidence here to put appellant on notice that a pedestrian was crossing the highway in front of him and to require him to use that high degree of vigilance and care required of motorists approaching an intersection where pedestrians normally cross a street.

Appellant was also indicted for driving a motor vehicle under the influence of liquor. There was substantial evidence to support the charge. A doctor and the chief of police testified in their opinion that appellant was under the influence of liquor. Against this there was only testimony of appellant that he had three glasses of wine mixed with a soft drink at his meal several hours before. There was no corroboration of this except the testimony of Mrs. McKinney as to the proper way he drove his car for a square before the fatal accident.

The jury found appellant "not guilty" of the liquor charge but while the fact-finding body was not convinced beyond a reasonable doubt of his guilt it must have felt that there was a grave suspicion that he was guilty; otherwise, they would not have imposed upon him the costs of prosecution. If appellant was under the influence of liquor when the accident happened, this condition may well have contributed to the fatal result. We are of the opinion that the evidence discloses a lack of vigilance and attention and an absence of due care on the part of this appellant, which at least contributed to the unfortunate event.

We also think that the preponderance of the credible evidence warrants us in finding as a fact that appellant was under the influence of liquor when the fatal accident occurred.

The testimony of the chief of police and the physician together with appellant's own account of his activities on the day of the accident in our opinion has greater weight than the testimony of defendant, who is obviously an interested witness.

From all of the evidence, we find the following facts:

A. Appellant, defendant, was the operator of an automobile involved in a fatal accident and that said accident was caused in part by the negligence of appellant.

B. Appellant, defendant, on April 19, 1953, did operate a motor vehicle on a public highway, namely Route 422 in Montgomery County, while under the influence of intoxicating liquor.

And now, April 7, 1954, after a full hearing de novo, the operator's license of Michael Kozich as issued by the Commonwealth of Pennsylvania, Department of Revenue, is hereby suspended for a period of one year from April 6, 1954.